UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURO SANCHEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>P. D. BRAZELTON,<br><br>　　　　Respondent. | Case No.: 1:12-cv-01152-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

　　　　Petitioner is in custody of the California Department of Corrections and Rehabilitation after having been convicted by a jury of attempted deliberate and premeditated murder, second degree robbery, and assault with a firearm. The jury found Petitioner had used a firearm in the commission of these acts and that the victim suffered great bodily injury. Petitioner was sentenced to an indeterminate term of life with the possibility of parole for the attempted murder conviction and a consecutive indeterminate sentence of 25 years-to-life for the enhancement. (Doc. 10, Ex. A, p. 1).

　　　　Petitioner appealed to the California Court of Appeals, Fifth Appellate District (the "5[th] DCA"), which affirmed Petitioner's conviction. (Doc. 10, Ex. A). Petitioner then filed a petition for review in the California Supreme Court that was denied on April 18, 2012. (Lodged Documents ("LD") 16; 17).

On July 13, 2012, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was filed on September 14, 2012. (Doc. 10). Respondent does not contend that the sole ground for relief in the petition has not been fully exhausted. (Doc. 10, p. 6). On October 24, 2012, Petitioner filed his Traverse. (Doc. 13).

**FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

On Monday morning, March 9, 2009, Corina Hernandez was in the back office of one of the two grocery stores she co-owned with her husband, taking account of the receipts and money accumulated over the prior weekend. She believed 20 to 30 thousand dollars in cash was on her desk at that time.

Margarita Medina, the cashier at the front register, informed Hernandez that a regular customer had a check he wished to cash. Check cashing was a service Hernandez provided to regular customers. Hernandez told Medina to let the customer come back to her office.

The regular customer, however, turned out to be defendant, whom Hernandez recognized from her previous encounter with him a day or two prior when he had first come in to ask about cashing a personal check. Hernandez denied defendant that service on that day despite his pleas of urgency and necessity because, as a matter of policy, she only cashed checks for regular customers and she did not know defendant. Although he had questioned why she would not cash his check when he knew she frequently cashed the checks of one Wilber Galvez, defendant left without incident.

On this Monday, however, Hernandez became fearful once she realized who the "regular customer" was. Defendant stepped into her office, immediately closed the door behind him, and told her he had come for money.

Hernandez stood up from her chair and tried to protect the money on her desk. She struggled with defendant, breaking a fake fingernail in the process. Defendant reached into his waistband and pulled out a gun. He pushed Hernandez back into her chair. He held the barrel of the gun to the left side of Hernandez's forehead. Hernandez raised and flapped her arms in response to seeing the gun. Without saying another word, defendant pulled the trigger, and seconds later, pulled the trigger again. One bullet entered Hernandez's head above her left eye, and exited behind her left ear. Another bullet went through the office wall and into the ceiling outside the office. Defendant grabbed some money from the desk and fled the office, closing the door behind him.

As defendant was running through the store, he came face to face with Medina who, after hearing the gunshots, was walking back to see what was going on. Defendant held his midsection and ran past her. Another customer saw defendant run out of the store and to a waiting truck. Defendant got in on the passenger side, and the truck quickly left the scene.

(Doc. 10, Ex. A).

**DISCUSSION**

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. §§ 2254(a), 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000). Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether

it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

4

Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III.  Petitioner's Claim Of Insufficient Evidence of Premeditation And Deliberation.

The instant petition itself alleges only one claim as a ground for habeas relief, i.e., that insufficient evidence was presented to support the jury's finding of premeditation and deliberation. (Doc. 1, p. 4).  This contention is without merit.

    1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> Defendant asserts insufficient evidence supports a finding he acted with premeditation and deliberation because he manifested no behavior indicating calm reflection before he shot Hernandez in the head. Defendant more specifically argues his actions do not lead to the inference he had a preconceived plan to kill Hernandez, that the firing of two shots does not indicate premeditation, and that his use of lethal force in response to resistance was instantaneous and reflexive, rather than thought out. He asks this court to reduce his conviction to that of simple attempted murder and remand for resentencing.
>
> The People counter that sufficient evidence supported the jury's finding, namely that defendant entered the store possessing a loaded gun after putting in place an escape plan.
>
> In considering defendant's claim of insufficiency of the evidence, we review the whole record in the light most favorable to the judgment for substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that any rational trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Johnson (1980) 26 Cal.3d 557, 578.) "[We] presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.]" (People v. Kraft (2000) 23 Cal.4th 978, 1053.) "We do not substitute our judgment for that of the jury." (People v. Garcia (2000) 78 Cal.App.4th 1422, 1427.)
>
> "'The test on appeal is whether a rational juror could, on the evidence presented, find the essential elements of the crime—here including premeditation and deliberation—beyond a reasonable doubt.' [Citation.] A first degree murder conviction will be upheld when there is extremely strong evidence of planning, or when there is evidence of motive with evidence of either planning or manner. [Citations.]" (People v. Romero (2008) 44 Cal.4th 386, 400–401, citing People v. Anderson (1968) 70 Cal.2d 15, 27.) "[T]hese [Anderson] factors need not all be present, or in any special combination; nor must they be accorded a particular weight. [Citation.] Rather, the Anderson factors serve as an aid to reviewing courts in assessing whether the killing was the result of preexisting reflection. [Citation.]" (People v. Garcia, supra, 78 Cal.App.4th at p. 1427.)
>
> "[I]t is important to keep in mind that deliberation and premeditation can occur in a brief period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly....' [Citation.]" (People v. Garcia, supra, 78 Cal.App.4th at pp. 1427–1428.)

> Attempted deliberate and premeditated murder requires the same finding of premeditation and deliberation as does the completed crime. (See People v. Villegas (2001) 92 Cal.App.4th 1217, 1223.)
>
> Here, the record reveals substantial evidence from which the jury could infer defendant's premeditation and deliberation, as shown by his planning, motive, and the manner in which he attempted to kill Hernandez. First, as to planning, defendant brought a loaded gun to the store and shot Hernandez, who was unarmed, almost immediately after entering the back office. Having visited previously, defendant knew there was easy access from the store to the office, and he planned a quick getaway, even enlisting an accomplice. (See People v. Miranda (1987) 44 Cal.3d 57, 87 [fact that defendant brought his loaded gun into the store and shortly thereafter used it to kill an unarmed victim reasonably suggests that defendant considered the possibility of murder in advance], abrogated on other grounds by People v. Marshall (1990) 50 Cal.3d 907, 933, fn. 4; People v. Romero, supra, 44 Cal.4th at p. 401 [jury could infer planning from defendant's bringing gun to the video store where, without any warning or apparent awareness of the impending attack, victim was shot in the back of the head].)
>
> As to motive, defendant had attempted to cash a check with Hernandez but was denied only a day or two prior. Defendant told Hernandez he needed the money urgently. He walked in on the day of the shooting and immediately demanded money. Thousands of dollars were on Hernandez's desk in plain view. The jury could have reasonably inferred defendant intended to rob Hernandez and deliberately decided to kill her to prevent her from stopping him. (See People v. Miranda, supra, 44 Cal.3d at p. 87 [motive where victim had refused to sell defendant beer just prior to defendant shooting victim].)
>
> Finally, the manner and circumstances of the incident also indicate premeditation and deliberation. Defendant closed the door immediately after walking in, ensuring that he and Hernandez were alone. He pulled the gun from his waistband and pushed Hernandez into her chair. He made no further demands from Hernandez before putting the gun to her head. Defendant shot the gun twice at close range, with several seconds passing between shots. His actions support the inference he was not acting solely to obtain the money by scaring Hernandez into giving it to him, or was acting out of a rash impulse; but rather, he had formulated a calculated decision to end her life. (See People v. Romero, supra, 44 Cal.4th at p. 401 [premeditation supported where victim was killed by a single gunshot fired from a gun placed against his head, execution style, without struggle and unprovoked].)
>
> Substantial evidence supports the jury's finding that defendant acted with premeditation and deliberation.

(Doc. 10, Ex. A).

        2.  <u>Federal Standard</u>.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no

rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal court "must presume– even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal court must ask whether the state court decision reflected an unreasonable application of Jackson and Winship. Id. at 1275.[1]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597, 102 S.Ct. 1198 (1981).

---

[1] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

In Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting Jackson

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos, 132 S.Ct. at 3.

> "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

### 3. Analysis.

To the extent that the 5th DCA's opinion does not expressly cite the Jackson v. Virginia standard in analyzing the sufficiency claim raised herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims in state criminal proceedings. People v. Johnson, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct federal legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard. After careful review, and for the reasons set forth below, the Court concludes that it was neither contrary to nor an unreasonable application of Jackson.

Even a cursory examination of the facts adduced at trial reveals Petitioner's claim to be unsupported. As the 5th DCA observed, Petitioner, who had had his request to cash a personal check refused by the victim several days previously, entered the grocery store with a loaded gun in his waistband, requested to see the victim, was shown to her office, closed the office door, demanded

money, and then put his gun to the head of the victim and shot her twice, took thousands of dollars from the desk, fled to a waiting car, got in the passenger side, and was driven off.

It requires little analysis to infer from these grim facts both premeditation and deliberation on the part of Petitioner to murder the victim. First, the fact that Petitioner waited several days after being denied the chance to cash a personal check, despite his pleas of financial urgency, belies any claim that he was acting in heat of passion instead of premeditation and deliberation. See Parker v. Matthews, __U.S.__, 132 S.Ct. 2148, 2153 (2012) (delay of several hours between purchasing gun and going to wife's house to shoot her belied claim of extreme emotional disturbance). Second, the manner in which the attempted murder was carried out is strongly indicative of premeditation and deliberation, i.e., that Petitioner, already armed with a gun, went immediately to the victim's office, closed her door so he would not be disturbed, demanded money, and then put a gun *to her head* and fired twice. Such a scenario is *inconsistent* with a sudden quarrel or fight. See Davis v. Woodford, 384 F.3d 628, 640 (9th Cir. 2003); Mendoza v. McDonald, 2010 WL 4055949, *4 (C.D. Cal. July 22, 2010). The victim was female and seated, and her only defensive "wound" was a broken nail, all factors suggesting that she was immediately overpowered by her male attacker and was essentially helpless once the gun was put to her head. Such circumstances negate any claim that an unanticipated quarrel or fight erupted that prompted the shooting. In short, Petitioner was in complete control of the situation. He could have simply taken the money and fled; however, he chose instead to attempt to execute the victim, presumably as retribution for her refusal to cash his personal check on an earlier occasion. Moreover, the fact that Petitioner entered the store with a loaded weapon is also strong evidence that he acted with deliberation and premeditation. Last, the fact that Petitioner had a "getaway driver" waiting outside to assist in his escape shows planning and organization, which is consistent with a finding of premeditation and deliberation.

Petitioner, in his Traverse, argues that while he "may have intended to kill" the victim when he fired his weapon twice, and "while robbery may have motivated the shooting," nevertheless "the record lacks any evidence that petitioner planned to use lethal force in conjunction with the robbery." (Doc. 13, p. 4). To the contrary, Petitioner contends, the record shows that Petitioner was "provoked and that that provocation triggered a reflexive and potentially lethal response." (Id.).

Although Petitioner's careful sifting and cherry-picking of the evidence presented at trial might convince some jurors that the attempted murder was the product of provocation rather than premeditation, the Court is not permitted to engage in this conduct on habeas review. Rather, the Court's job is to decide whether, construing all of the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319.

All of the circumstances discussed above, i.e., motive, planning, and manner of attempted killing, support, and are consistent with, the jury's finding of premeditation and deliberation. As the California courts have frequently held, premeditation does not require an extended period of time. People v. Thompson, 49 Cal.4th 79 (2010); People v. Koontz, 27 Cal.4th 1041, 1080 (2002). "The test is not time, but reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." Thompson, 49 Cal.4th at 587 (quoting People v. Osband, 13 Cal.4th 622 (1996)). Petitioner's arguments notwithstanding, the Court finds nothing in this record that suggests that this attempted murder was the product of anything other than premeditation and deliberation. As Respondent points out, without question *some* rational juror could have found premeditation and deliberation beyond a reasonable doubt based on this evidence. Accordingly, the state court's adjudication was objectively reasonable and Petitioner's claim of insufficient evidence should be rejected.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections. The

Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   **December 9, 2014**                  **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE